IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vaneosha Nelson, ) | C/A No. 2:14-CV-4247-DCN-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT & RECOMMENDATION |
| ) | OF MAGISTRATE JUDGE |
| Town of Mt. Pleasant Police Department, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the Defendant's Motion for Summary Judgment. (Dkt. No. 18.) In her Complaint, the Plaintiff alleges that she was wrongfully terminated from the Mt. Pleasant Police Department ("Department") in violation of Title VII and public policy. The Complaint was filed in the Charleston County Court of Common Pleas on October 10, 2014, and was removed by the Department on October 31, 2014. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge. For the reasons stated herein, the undersigned recommends that the Defendant's Motion for Summary Judgment (Dkt. No. 18.) be granted.

## **Facts**

The Plaintiff, an African American woman, became employed as a police recruit by the Mt. Pleasant Police Department on March 8, 2013. At the time she was hired and at all times relevant to her claims, the Plaintiff kept her hair in a natural state, free of any chemical processing or straightening. The Department maintains an appearance policy for police officers that has specific provisions regarding grooming. In relevant part, the grooming standard states:

> Hair must be clean, neat, combed and conservatively groomed. Hair shall not be worn longer than the top of the shirt collar at the back of the neck when standing with the head in a normal position. The bulk or length of the hair shall not interfere with the normal wearing of all standard head gear. Exotic coloring, cuts, or styling is prohibited.

(Dkt. No. 18-2 at 9.) The Plaintiff was first approached about her hair by Corporal Brandon of the Department who told her that she could not wear her hair in a bun high on her head. (Dkt. No. 18-3 at 2-3.) Corporal Brandon spoke to the Plaintiff at the behest of Deputy Chief Stan Gregg. (Dkt. No. 18-2 at 10.) After speaking with Corporal Brandon approximately twice, Sergeant Salata, a male employee of the Department, discussed the grooming policy with the Plaintiff, but he did not give her any instructions regarding her hair. (*Id.* at 4.) The Department had two black female officers talk to the Plaintiff about how to change her hair. (Dkt. No. 18-2 at 2.)

The Department ordered larger head gear to attempt to fit the Plaintiff's head. (Dkt. No. 18-2 at 2.) On June 3, 2013, the Plaintiff met with Chief Carl Ritchie and Deputy Chief Gregg. (*Id.* at 3.) They asked her to try on the larger head gear. (*Id.*) The Department alleges she refused to try on the larger head gear. (*Id.*) The Plaintiff alleges she tried on the head gear and it fit. (Dkt. No. 21-1 at 2.) The Plaintiff alleges that the head gear she was made to try on was not part of the uniform and she was being singled out. (*Id.*) The Department alleges that the Plaintiff stated she refused to bring her hair into compliance with the grooming policy resulting in her termination. (Dkt. No. 18-2 at 3.)

The Plaintiff alleges that she modified her hairstyle to comply with the Department's grooming requirements. (Dkt. No. 21 at 4.) Specifically, the Plaintiff alleges that her hairstyle fit into the head gear that the Department asked her to wear and that she was fired because her supervisors "disapproved of the natural texture of unprocessed African American hair…." (*Id.*;

2

21-2 at 1-2.) The Department contends that the head gear did not fit and that she was terminated failing to comply with the grooming policy. (Dkt. No. 18-1 at 3; 18-2 at 2-3.)

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## Analysis

The Plaintiff alleges employment discrimination based on her race[1] in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981 as well as state law.[2] Title VII makes it

---

[1] In the Complaint, the Plaintiff alleges she was terminated "because of her race and age." (Dkt. No. 1-1 ¶17.) There are no further allegations in the Complaint regarding age discrimination and the record contains no evidence of age discrimination. To the extent the Plaintiff is asserting a

3

"an unlawful employment practice for an employer to…discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 states that "[a]ll persons…shall have the same right…to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Racial discrimination claims under Title VII require proof of intentional discrimination, either by direct evidence[3] or by the structured procedures set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

The Supreme Court of the United States articulated a three-part formula for analyzing discrimination cases in *McDonnell Douglas*.  First, a plaintiff must establish a *prima facie* case of discrimination.  If a *prima facie* case is established, a rebuttable presumption is created that the defendant unlawfully discriminated against her.  Second, once this presumption has been established, the burden of production shifts to the defendant to show a legitimate, non-discriminatory reason for its actions.  Third, if the defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then to the plaintiff to come forward with

---

claim for age discrimination, she has not met the pleading requirements of FED. R. CIV. P. 8 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and this court recommends summary judgment be granted in favor of the Defendants.

[2] "Under Title VII and either § 1981 or § 1983, the elements of the required *prima facie* case are the same." *Gairola v. Com. of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) (citing *Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 915 n. 5 (3d Cir.1983), *cert. denied*, 469 U.S. 892, (1984); *Huebschen v. Dep't of Health and Soc. Services*, 716 F.2d 1167, 1170 (7th Cir.1983); *Lincoln v. Bd. of Regents*, 697 F.2d 928, 935 n. 6 (11th Cir.), *cert. denied*, 464 U.S. 826 (1983); *Gray v. Bd. of Higher Educ.*, 692 F.2d 901, 905 n. 8 (2d Cir.1982); *Lewis v. Central Piedmont Cmty. Coll.*, 689 F.2d 1207, 1208 n. 3 (4th Cir.1982), *cert. denied*, 460 U.S. 1040 (1983); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir.1980); *Johnson v. Alexander*, 572 F.2d 1219, 1223 n. 3 (8th Cir.), *cert. denied*, 439 U.S. 986 (1978)).

[3] The Plaintiff has not presented any direct evidence of discrimination.

evidence that the defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the defendant were really based on the plaintiff's race. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-56 (1981); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234-35 (4th Cir. 1991). Despite these shifting burdens of production, a plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. *Texas Dep't of Community Affairs*, 450 U.S. at 252-53; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the *McDonnell Douglas* formula and establish a *prima facie* case of race discrimination, the Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, that she was replaced (in the case of a discharge claim) by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. *See generally*, *Austen v. HCA Health Services of Virginia, Inc.*, No. 00-2359, 2001 WL 242203 at \*\*1 (4th Cir. Mar. 12, 2001); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995), *cert. denied*, 516 U.S. 870 (1995). *See also Gilbert v. Penn-Wheeling Closure Corp.*, 917 F.Supp. 1119 (N.D.W.Va. 1996).

The Plaintiff has failed to present evidence to establish a *prima facie* case for race discrimination. There is no dispute that the Plaintiff is an African American and therefore a member of a protected class. As to whether she was performing her job satisfactorily, the Plaintiff alleges that she was in compliance with the grooming policy at the time of her termination. (Dkt. No. 21-1 at 2.) The Department disputes that she complied with the grooming

5

policy. (Dkt. No. 18-2 at 3.) It is undisputed that the Plaintiff was subject to an adverse employment action because she was terminated from her position with the Department.

The final element a Plaintiff must show to establish a *prima facie* case for race discrimination is that other employees who were not members of her protected class were treated more favorably, that she was replaced (in the case of a discharge claim) by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. There is no comparator evidence in the record that other employees outside her class were treated more favorably than the Plaintiff.[4] Likewise, there is no evidence as to the race of the Plaintiff's replacement.

The Plaintiff fails to show "other evidence" of discrimination to satisfy the final element of a *prima facie* case as well. The Plaintiff "alleges that her hair style at the time of her termination was in compliance with the grooming standard, that the head gear did fit properly, but that she was nonetheless terminat[ed] because she decline[d] to either straighten her natural African American hair or to simply cut it off." (Dkt. No. 21 at 4.) She alleges that "she was terminated in spite of her compliance with the grooming policy because her supervisor did not find her natural hair aesthetically pleasing." (*Id.*) (emphasis in original).

Title VII protects employees from discrimination because of immutable characteristics such as race. *Harris v. Wabash Magnetics, Inc.*, No. 4:01-CV-00022, 2002 WL 32512848, at *2 (W.D. Va. July 19, 2002), *aff'd,* 58 F. App'x 996 (4th Cir. 2003) (citing *Gairola v. Com. Of VA. Dep't of Gen. Svs.*, 753 F.2d 1281, 1287 (4th Cir.1985)); *Willingham v. Macon Tel. Publ'g Co.*, 507 F.2d 1084, 1091 (5th Cir.1975). Although in the context of sex discrimination, the Fourth

---

[4] The only evidence regarding employees' hairstyles outside the Plaintiff's class is a reference to white female employees being allowed to wear ponytails. (Dkt. No. 18-3 at 14.) The Plaintiff has not alleged she ever wore a ponytail or desired to wear her hair in a ponytail.

Circuit has held that hair length is not an immutable characteristic because "it may be changed at will." *Earwood v. Cont'l Se. Lines, Inc.*, 539 F.2d 1349, 1351 (4th Cir. 1976). Quoting the Supreme Court, the Fourth Circuit stated that in a Title VII action "against an employer, even a government employer, a grooming regulation will be sustained unless the decision to enact the regulation or the regulation itself 'is so irrational that it may be branded 'arbitrary,' and therefore a deprivation of respondent's 'liberty' interest in freedom to choose his own hair style.'" *Id.* at 1351(quoting *Kelley v. Johnson*, 425 U.S. 238 (1976)). "It has long been settled that employers' grooming policies are outside the purview of Title VII." *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 11 F. Supp. 3d 1139, 1142 (S.D. Ala. 2014).

The Plaintiff contends she was in compliance with the grooming policy, but she was fired because her supervisor disliked her natural African American hair. The Plaintiff is attempting to make a distinction that makes no difference. Whether she was in technical violation of the grooming policy does not create a genuine issue of material fact.[5] Hair is not an immutable characteristic of one's race. *See Rogers v. American Airlines, Inc.*, 527 F.Supp. 229 (S.D.N.Y.1981) (holding that "an all-braided hairstyle ... is an 'easily changed characteristic,' and, even if socioculturally associated with a particular race or nationality, is not an impermissible basis for distinctions in the application of employment practices by an employer."); *Eatman v. United Parcel Serv.*, 194 F.Supp.2d 256 (S.D.N.Y.2002) (holding that that "locked hair" is not unique to African–Americans and that "it is beyond cavil that Title VII

---

[5] Assuming *arguendo* that she was compliance with the grooming policy yet was terminated for her hairstyle, the Plaintiff still must show under the *McDonnell Douglas* framework that the Department's proffered explanation for her termination—i.e violation of the grooming policy—is "a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 248 (1981). The evidence contains no evidence she was terminated for any reason other than her hairstyle. The Department employs many employees who are African American in similar positions to the Plaintiff's former position. (Dkt. No. 18-2 at 3.)

7

does not prohibit discrimination on the basis of locked hair."); *Pitts v. Wild Adventures, Inc.*, 2008 WL 1899306 (M.D.Ga. Apr. 25, 2008) (holding that "[d]readlocks and cornrows are not immutable characteristic."). As described by the Fourth Circuit, a hairstyle may be "changed at will." *Earwood*, 539 F.2d at 1351. Taking the Plaintiff's allegations at face value, her termination was not motivated by her race. She admits she could have kept her job if she had cut her hair or chemically straightened it. (18-3 at 13-14.) She chose not to do neither.

The Plaintiff's argument is inconsistent. She states that she was terminated "because she decline[d] to either straighten her African American hair or simply cut it off." (Dkt. No. 21 at 4.) She then states that the "Defendant cites case law in support of its position that there exists no Constitutionally [sic] protected right to wear a particular ethnic hairstyle [yet] at no point has the Plaintiff based her arguments…on such a premise." (*Id.* at 4-5.) The Plaintiff is arguing she was fired for her hair style. For any claim to exist under Title VII, the Plaintiff must show she was discriminated against for an immutable characteristic, such as her race. The only discrimination she has alleged relates to her hair, which is not an immutable characteristic of her race. Therefore, this court finds the Plaintiff has not made a *prima facie* case she was terminated because of her race and recommends that the Defendant is entitled to judgment as a matter of law.

## **State Law Claims**

The Plaintiff alleges causes of actions under the South Carolina Human Affairs Act, S.C. Code §1-13-10 et seq., and for violation of public policy under South Carolina state law. (Dkt. No. 1-1.) The Defendant's Motion for Summary Judgment "requests the court grant summary judgment as to all claims…." (Dkt. No. 18.) However, neither of the state law causes of action was addressed in Defendant's Memorandum in Support of Motion for Summary Judgment. (Dkt.

8

No. 18-1.) "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring). Diversity does not exist in this case as all parties reside in South Carolina. Therefore, undersigned recommends the Plaintiff's state law causes of action be remanded to state court pursuant to 28 U.S.C. § 1367(c)(3). *See Hinson v. Norwest Fin. S. Carolina, Inc*., 239 F.3d 611, 616 (4th Cir. 2001) (holding after all federal claims were dismissed that principles of pendant jurisdiction applied and "a court may dismiss the claim or, if it was removed, remand it to State court").

## Recommendation

Accordingly, the Magistrate Judge **RECOMMENDS** that the Defendant's Motion for Summary Judgment (Dkt. No. 18) be **GRANTED** as to the Plaintiff's federal claims. The Magistrate Judge **RECOMMENDS** that the Plaintiff's state law claims be **REMANDED** to state court.

**IT IS SO RECOMMENDED.**

June 27, 2016

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).